IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOG & BONE HOLDINGS PTY LTD, <br><br> Plaintiff, <br><br> v. <br><br> NOKĒ LLC and FŪZ DESIGNS LLC <br><br> Defendants | Civil Action No. 16-CV-3932 <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT
AND FALSE ADVERTSING UNDER THE LANHAM ACT**

Plaintiff, Dog & Bone Holdings Pty Ltd ("Dog & Bone"), by their attorneys, for their Complaint against Defendants Nokē LLC and Fūz Designs LLC (collectively "Nokē") allege as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement of U.S. Patent No. 9,109,379 (the "'379 Patent") arising under the patent laws of the United States, Title 35 U.S.C. §§ 100 *et seq.*, and for false advertising arising under the Lanham Act, Title 15 U.S.C. §§ 1051 et seq. A true and correct copy of the '379 Patent is attached hereto as **Exhibit A**.

**PARTIES**

2. Plaintiff Dog & Bone Holdings Pty Ltd is a company organized under the laws of Australia, with its principal place of business at 6/39 Jeays Street, Bowen Hills, QLD 4006, Australia.

3. On information and belief Defendant Nokē LLC is a Limited Liability Company Organized under the Laws of the State of Utah, with a principal place of business at 10808 South River Front Parkway, Suite 290, South Jordan, UT 84095.

4. On information and belief Defendant Fūz Designs LLC is a Limited Liability Company Organized under the Laws of the State of Utah, with a principal place of business at 10808 South River Front Parkway, Suite 290, South Jordan, UT 84095.

## SINGLE ACTION

5. This suit is commenced against Nokē LLC and Fūz Designs LLC in a single action pursuant to 35 U.S.C. § 299 because, *inter alia*, upon information and belief, (i) Nokē LLC and Fūz Designs LLC share common ownership, share management, share facilities, and share distribution platforms, and (ii) use, advertise, market, make, sell, offer for sale and import the same infringing product line.

6. Accordingly, the claims of this complaint arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, selling, or offering for sale of the same accused products, and questions of fact common to Nokē LLC and Fūz Designs LLC will arise in the action pursuant to 35 U.S.C. § 299.

## JURISDICTION AND VENUE

7. This action arises under the Laws of the United States, 35 U.S.C. § 271 and 15 U.S.C. §§ 1125, and accordingly this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over the Defendants for at least the following reasons: (i) Defendants have committed acts of patent infringement and/or contributed to or induced acts of patent infringement by others in this District and continue to do so; (ii)

Defendants have made, and on information and belief continue to make, false or misleading representations of fact in this District that have caused and are likely to cause harm to Plaintiff's commercial activities in this District; and (iii) Defendants have purposefully established substantial, systematic and continuous contacts with this District and expects or should reasonably expect to be subjected to this Court's jurisdiction. *See e.g.,* **Exhibit B**, at 1 (Nokē products sold through B&H Store, which is only located in NYC; *Id* at 3-6 Fūz Designs' shows the Noke at Engadget Expand in NYC).

9. Venue as to Defendants is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants have committed acts of infringement and false advertising in this State and this District, are subject to personal jurisdiction in this District, and upon information and belief, substantial part of the events giving rise to the claims at issue occurred within the territorial jurisdiction of this Court.

## STATEMENT OF FACTUAL BACKGROUND

### A. Dog & Bone and its LockSmart® Padlock

10. Dog & Bone is an Australian-based electronics company focused on cutting edge innovation in the field of "smart" electronic accessories for mobile devices. The company's products, which include protective smartphone cases, smartphone charging cases and a line of keyless Bluetooth connected padlocks are protected by various patents and are sold worldwide, including in Australia, the United States, Europe, and Asia.

11. Dog & Bone was founded in 2012 by Lee Ranchod, an entrepreneur and inventor with more than fifteen years experience in the electronics and mobile phone industry. Mr. Ranchod, who has Electrical and Electronics Engineering degree as well as business education,

has been the driving force behind Dog & Bone's innovations and is the inventor of many of the company's technologies.

12. In early 2014 Mr. Ranchod invented and designed a padlock that can connect to a smartphone and other mobile devices using Bluetooth technology. The Bluetooth Padlock did not use a conventional key, but instead could be unlocked from a software application running on a smartphone or other mobile device.

13. Dog & Bone markets and sells its keyless Bluetooth padlock in the U.S. and worldwide under the LockSmart® name. Dog & Bone's LockSmart® padlock together with a smartphone running the associated application is illustrated on the following figure:



14. On August 12, 2014, Mr. Ranchod filed a patent application with the United States Patent and Trademark Office ("USPTO") for his invention of the keyless Bluetooth padlock that wirelessly connects to a software application running on a smartphone.

**C. The Nokē Padlock**

15. On August 18, 2014, a week after Dog & Bone filed its patent application, Defendant Fūz Designs launched a Kickstarter funding campaign to raise money to facilitate the design and development of a keyless padlock, called the Nokē, which connects to a software application running on a smartphone using Bluetooth technology (the "Nokē Padlock"). (*See,*

4

*e.g.,* https://www.kickstarter.com/projects/fuzdesigns/noke-the-worlds-first-bluetooth-padlock/description).  The Noke Padlock together with a smartphone running the associated application is illustrated on the following figure:



16. On information and belief, on or about July 23, 2015, Fūz Designs or its founders, David Gengler and Cameron Gibbs, founded Defendant Nokē LLC to focus on the development, marketing and sales of the Nokē padlock.

17. On Information and belief, the Fūz Designs and Noke LLC began shipping the Noke Padlock to consumers in December 2015.

**B. The Patent-in-Suit and Noke's Infringement**

18. Mr. Ranchod's patent application was allowed and the '379 Patent, entitled "Keyless Padlock, System and Method of Use," was duly and legally issued on August 18, 2015. The '379 Patent is assigned to Plaintiff Dog & Bone Holdings Pty Ltd.

19. One aspect of the invention claimed in the '379 patent is directed to keyless padlocks that can be unlocked using a software application on a personal computing device transmitting a code or signal to the padlock.  *See, e.g.,* **Exhibit A** ('379 Patent), claims 1, 2, 3, 4, 7, 12.

5

20. By way of example, independent claim 1 states:

> 1. A keyless padlock system including
> a. a keyless padlock having a padlock body, a shackle, a locking mechanism located in the body and associated with the shackle to lock the shackle to the body in a locked condition and to release at least a part of the shackle in an unlocked condition, at least one receiver, at least one control assembly and at least one actuator; and
> b. a personal computing device having at least one transmitter, a processor with memory operating a software application and a display, the software application accessing a identifying code unique to the keyless padlock and transmitting said identifying code to the padlock,
> wherein the at least one control assembly of the padlock will trigger the at least one actuator to unlock the padlock shackle if the identifying code received by the at least one receiver of the padlock matches that of the padlock and will not open if the identifying code does not match.

See **Exhibit A** ('379 Patent), claim 1

21. Another aspect of the invention is directed to keyless padlocks that can be unlocked using a software application on a personal computing device of a third party who receives an identifying code from an authorized user. *See e.g.*, **Exhibit A**, claims 11, 15, 16.

22. Another aspect of the invention is directed to determining and storing the geographic location of a keyless padlock that has been connected to a software application on a personal computing device. *See* **Exhibit A**, claims 13, 14.

23. On information and belief, the Noke Padlock contains all elements of at least claims 1-4, 7, and 11-16 of the '379 patent.

24. The Noke padlock is a keyless padlock having a body, shackle, electric actuation device, locking mechanism, control assembly and a Bluetooth transceiver, as illustrated in the following figure:

6



*See* https://www.kickstarter.com/projects/fuzdesigns/noke-the-worlds-first-bluetooth-padlock/description

25. The Noke Padlock connects to a smartphone operating a Nokē provided software application ("Nokē App") using at least Bluetooth 4.0 Low Energy (LE) technology. *See, e.g.,* http://noke.com/ ("Noke automatically finds and connects to your Bluetooth 4.0 enabled smartphone."), *http://noke.com/pages/padlock#tech-specs,* **Exhibit C** (Nokē App on Google Play store).

26. On information and belief, the Nokē App accesses a code or signal associated with the Nokē Padlock (one or more of, *e.g.*, Device Address, Access Address, Service and/or Characteristics identifiers, LLIDs, UUIDs, and others) and transmits the code or signal to the Nokē Padlock to unlock it. *See e.g.,* Bluetooth Core Specification Ver. 4.0, at Vol. 1, pp. 20-22, 47-48, 68, 70, 95-97 (describing, *e.g.*, Bluetooth LE Operation, Connections, Logical Links, Profiles, Services and Characteristics, etc. ); *Id.,* at Vol. 3 (Core Systems Package); *Id.,* at Vol 6, pp. 33, 36-37, 52, (explaining, *e.g.*, packet formats, and the Link Layer operation in Bluetooth LE communications).

7

27. On information and belief, the Nokē App allows providing a code to third party users to authorize the third party users to unlock the Nokē Padlock from their smartphones using the Nokē App. *See e.g.,* **Exhibit C** (Noke App Description) at p. 2 ("Invite family and friends to have access to your lock using their own Bluetooth device. Within the Noke app, you can share and revoke access with custom settings . . . .").

28. On information and belief the Noke App allows the determination and storage of the geographic location of the Noke Padlock. *See e.g.,* **Exhibit C** (Noke App Description) at p. 2 ("Track where your lock is being used and view activity location on a map with the unique Noke GPS feature. . . . The Noke app provides you with an activity log so you can easily see who's used your lock and exactly when and where they did.")

**D. Defendants Learn of Dog & Bone's Patent**

29. On information and belief Nokē knew of Dog & Bone's patent covering keyless Bluetooth padlock technology. At least as early as November 2015, Dog & Bone has been heavily advertising and marketing the LockSmart® keyless Bluetooth padlock underscoring that it is covered by a patent. *See, e.g.,* https://www.dogandbonecases.com/products/locksmart/ (A world-1st patented keyless Bluetooth padlock), http://ces16.mapyourshow.com/7_0/exhibitor/exhibitor-details.cfm?ExhID=T0010922 ("NEW Patented Keyless, Trackable Bluetooth Padlock"), http://www.hitfar.com/Dog%20and%20Bone ("LockSmart. . . the world's FIRST patented Bluetooth keyless padlock"), http://www.dealerscope.com/article/dog-bone-debuts-patented-keyless-bluetooth-padlock/2/ (Dog & Bone Debuts Patented, Keyless Bluetooth Padlock). Blog posts and reviews comparing the Nokē to the LockSmart® padlocks also state that the LockSmart® is patented. (*See e.g.,* http://www.maxim.com/gear/best-bluetooth-padlock-

8

2015-12). It is highly likely that Nokē representatives have monitored publications about the Nokē padlocks and about its competitors and accordingly were aware of Dog & Bone's patent.

30. Both Dog & Bone and Nokē participated at the 2016 Consumer Electronics Show (the "CES 2016") held January 6-9, 2016 in Las Vegas, Nevada. At CES 2016 Dog & Bone showcased its LockSmart® Bluetooth lock, emphasizing that it was covered by a patent. At the CES 2016 Nokē's display booth was located diagonally across an isle from Dog & Bone's display booth as illustrated on the following picture:



*Floor plan illustrating Dog & Bone's and Nokē's locations at the CES 2016*

31. On information and belief, at the CES 2016 Nokē representatives observed Dog & Bone's display and marketing materials about the patented LockSmart® padlock, and have been informed by CES2016 visitors or participants of the existence of Dog & Bone's patent.

**D. Nokē's False Advertising Claims**

32.     Fūz Designs and Nokē LLC advertise the Nokē Padlock on their websites, and through other channels.  *See, e.g.,* http://fuzdesigns.com/, http://noke.com/.

33.     As early as August 18, 2014 – in contradiction of the fact that Dog & Bone had already invented a Bluetooth padlock and applied for a patent on the technology – Fūz Designs and Nokē began consistently and aggressively to promote and advertise the Nokē Padlock as the "world's first Bluetooth Padlock," "world's first smart padlock" and other variations of the same false claim.  *See, e.g.,* https://www.kickstarter.com/projects/fuzdesigns/ noke-the-worlds-first-bluetooth-padlock/description, Aug. 18, 2014 ("Noke: The World's First Bluetooth Padlock"), http://www.cnet.com/news/bluetooth-padlock-eliminates-the-need-for-keys/, Aug 18, 2014 ("The Noke is claiming to be the world's first Bluetooth padlock . . ."); https://beterrific.com/fuz_designs_noke_engadget_expand/#respond, Nov. 21, 2014 ("NOKE (no key), the world's first Bluetooth padlock"); https://travgear.com/2016/01/21/reviewed-noke-smart-padlock/, Jan 21, 2016 ("world's first smart padlock").

34.     Fūz Designs won the 13th Annual Utah Innovation Awards in the Outdoor and Consumer Products category for the Noke as "the world's first smart padlock." https://utahinnovationawards.com/winners-announced-in-the-13th-annual-utah-innovation-awards/.

35.     On information and belief when Defendants began to unqualifiedly advertise that the Nokē padlock was "the world's first Bluetooth padlock," the Nokē padlock had not yet been a fully functional Bluetooth padlock as advertised.  On information and belief the first Nokē Bluetooth padlocks shipped to consumers in the United States in December 2015, a full year and

10

three months after Defendants falsely represented that the Nokē Padlock already had been the first Bluetooth padlock.

36. Defendants' false advertising claims have been available and publicly visible on the internet throughout the United States and the world. For example, an excerpt from a Google search for "first Bluetooth padlock" on May 11, 2016, shows that the first five results, as well as the sponsored ads are for the Noke Padlock, as the following figure illustrates:



37. Defendants' continuous and aggressive false advertising campaign has created a large volume of misleading information on the internet that, on information and belief, has deceived and has a high likelihood to continue to deceive potential consumer, retailers, distributors and other potential purchasers of Bluetooth padlocks that the Nokē Padlock was the

world's first Bluetooth padlock and that it had been an existing product since at least August 2014.

38. Dog & Bone's LockSmart® Bluetooth padlock is in direct competition with the Nokē Padlock and Dog & Bone has been injured through the potential loss of sales and reputation as a result of Nokē's false claims.

**CLAIMS FOR RELIEF**

**COUNT I**
**Direct Infringement of the '379 Patent**

39. Dog & Bone incorporates by reference the allegations of the preceding paragraphs of its Complaint.

40. On information and belief, at least as described in the preceding paragraphs, Defendants have directly infringed at least claims 1-4, 7, and 11-16, of the '379 Patent, by at least making, using, testing, selling, offering for sale within the United States, or importing into the United States the Nokē Padlock, the Noke App, and mobile devices running the Noke App.

41. Defendants' infringement is literal or under the doctrine of equivalents.

42. Defendants do not have a license to practice the inventions claimed in the '379 patent.

43. Defendants' infringement of the '379 patent has caused and continues to cause irreparable injury to Dog & Bone's business, goodwill and reputation, and upon information and belief, Defendants' actions will continue if not enjoined.

44. The acts of infringement by Defendants have caused and will continue to cause damage to Dog & Bone. Dog & Bone is entitled to recover damages from Defendants, in an amount adequate to compensate it for Defendants' infringement, but not less than a reasonable

royalty pursuant to 35 U.S.C. § 284.  The full measure of damages sustained as a result of Defendants' infringement will be proven at trial.

45. Defendants' infringement is and has been willful.  On information and belief, Defendants had pre-suit knowledge of the '379 patent no later than January 2016 from their participation at the CES 2016.  Defendants have acted and continue to act in disregard of an objectively high likelihood that its actions constituted direct and indirect infringement of a valid patent, and knew or should have known of that objectively high risk.

## COUNT II
### Indirect Infringement of the '379 Patent

46. Dog & Bone incorporates by reference the allegations of the preceding paragraphs of its Complaint.

47. Defendants have knowingly induced and continue to induce users of smartphones to infringe the '379 patent, including by intentionally developing, making, marketing, advertising, and/or providing Nokē Padlocks and the Nokē Apps for use with Bluetooth enabled smartphones, and providing documentation, materials, instructions, and training encouraging, promoting or inviting such use.  (See, e.g., **Exhibit 3** (Noke App Description), https://www.kickstarter.com/projects/fuzdesigns/noke-the-worlds-first-bluetooth-padlock/description#project_faq_102490 ("the app will be free.  It is an essential part of the product."), http://noke.com/pages/padlock ("Noke automatically finds and connects to your Bluetooth 4.0 enabled smartphone"), http://www.Noke.com ("A smart lock . . . [c]ompatible with iOS, Android, and Windows Phone"), http://noke.com/products/noke-padlock ("Noke is a padlock you unlock with your smartphone"), https://noke.happyfox.com/kb/article/6-noke-padlock-general-usage ("In order for your Noke to work, the Bluetooth on your phone must be turned on").

13

48. Defendants have contributed and continue to contribute to the infringement of the '379 Patent by users of Nokē Padlocks and Noke Apps, by at least making, selling, offering for sale within the United States, or importing into the United States, the Nokē Padlock and the Nokē App and providing documentation, marketing, advertising, training and support.  The Nokē Padlock and Nokē App are a material part of the invention claimed in the '379 patent and Defendants know and have known that these components are especially made or adapted for use with a smartphone in the infringement of the '379 patent and are not staple articles or commodities of commerce suitable for non-infringing use. *See, e.g., Id.*

49. Defendants' infringement of the '379 patent has caused and continues to cause irreparable injury to Dog & Bone's business, goodwill and reputation, and upon information and belief, Defendants' actions will continue if not enjoined.

50. The acts of infringement by Defendants have caused and will continue to cause damage to Dog & Bone.  Dog & Bone is entitled to recover damages from Defendants, in an amount adequate to compensate it for Defendants' infringement, but not less than a reasonable royalty pursuant to 35 U.S.C. § 284.  The full measure of damages sustained as a result of Defendants' infringement will be proven at trial.

51. Defendants' infringement is and has been willful.  On information and belief, Defendants had pre-suit knowledge of the '379 patent no later than January 2016 from their participation at the CES 2016.  Defendants have acted and continue to act in disregard of an objectively high likelihood that its actions constituted direct and indirect infringement of a valid patent, and knew or should have known of that objectively high risk.

## COUNT III
**False Advertising Under The Lanham Act 15 U.S.C. § 1125(a)**

52. Dog & Bone incorporates by reference the allegations of the preceding paragraphs of its Complaint.

53. Based on the foregoing paragraphs, Defendants have made and continue to make false and misleading statements of fact that constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants have disseminated the false and misleading statements described herein to the public through at least commercial advertising and promotion, and thus caused them to enter interstate commerce.

55. Defendants' false and misleading statements of fact concerning the nature, characteristics, and history of the Nokē Padlock are material, and have and are likely to continue to influence the purchasing decisions of consumers, distributors, retailers and other potential purchasers.

56. The Nokē Padlock competes directly with Dog & Bone's LockSmart® padlock in the relevant markets and Defendants' false advertising claims have actually deceived or have a tendency to deceive a substantial number of consumers, distributors, retailers and other potential purchaser of keyless Bluetooth padlocks.

57. Defendants' false and misleading advertising has caused and continues to cause irreparable injury to Dog & Bone's business, goodwill and reputation, and Dog & Bone has no adequate remedy at law.  Upon information and belief, Defendants' actions will continue if not enjoined and without corrective advertising.

58. As a direct and proximate result of Defendants' false and misleading advertising, Dog & Bone has incurred damages in an amount to be proven at trial.  On information and belief, such damages include, by way of non-limiting example, lost sales, harm to Dog & Bone's

business reputation and goodwill, lost profits and harm to the value and goodwill associated with the Dog & Bone's LockSmart® padlock.

59. Defendants knew, or by exercise of reasonable care should have known, that the above described advertising claims are false and/or misleading, and are likely to deceive the public. Accordingly, Defendants' actions were willful, making this an exceptional case within the meaning of 15 U.S.C. §1117.

## PRAYER FOR RELIEF

WHEREFORE, Dog & Bone respectfully requests that this Court provide relief and enter judgment as follows:

(a) That Nokē and Fūz Designs have directly infringed the '379 Patent;

(b) That Nokē and Fūz Designs have induced infringement of the '379 Patent;

(c) That Nokē and Fūz Designs have contributed to the infringement of the '379 Patent;

(d) That Nokē and Fūz Designs have willfully infringed the '379 Patent;

(e) That Nokē and Fūz Designs be ordered to account for and pay to Dog & Bone the damages resulting from Nokē's and Fūz Designs' infringement of the '379 Patent, together with interest and costs, and other damages permitted by 35 U.S.C. §§ 284, including enhanced damages up to three times the amount of damages found or measured, and further including an accounting for infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

(f) That Nokē and Fūz Designs be permanently enjoined from further using, making, having made, importing into the United States, selling and offering for sale the infringing product;

(g) That Nokē and Fūz Designs have violated the Lanham Act at 15 USC § 1125 as alleged in Claim III of this Complain;

(h) That Nokē and Fūz Designs be ordered, pursuant to the Lanham Act 15 USC §§ 1117, 1125, *et. al.* to pay Dog & Bone the actual and other monetary damages that it has suffered as a result of their conduct and actions, that they disgorge any profits therefrom, that they pay the costs of the action and that they be required to pay Dog & Bone three times the amount of actual damages suffered by Dog & Bone by virtue of the Nokē's and Fūz Designs' willful acts.

(i) That Nokē and Fūz Designs be ordered to undertake corrective advertising and other corrective actions to remedy the false advertising;

(j) That Nokē's and Fūz Designs' violations of the Lanham Act be adjudged to be an exceptional case, and Nokē and Fūz Designs be ordered to pay Dog & Bone's attorneys' fees.

(k) That Dog & Bone be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Dog & Bone demands a jury trial on all issues so triable.

Dated: May 26, 2016                              Stoyanov Law P.L.L.C.

                                                 By:    /s/ Stefan R. Stoyanov
                                                    Stefan R. Stoyanov (SDNY SS1527)
                                                    757 Third Avenue, 20th Floor
                                                    New York, NY 10017
                                                    E-Mail: Stefan@StoyanovLaw.com
                                                    Tel.: (212) 602-1338

                                                 *Attorney for Plaintiff Dog & Bone*